THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WILLIAM C. H.,[1]
    Plaintiff,

        v.                                        Civil No. 3:21-cv-105 (DJN)

KILOLO KIJAKAZI,
Acting Commissioner of the Social
Security Administration,
    Defendant.

**REPORT AND RECOMMENDATION**

       This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits under the Social Security Act (the "Act"). Plaintiff was fifty-one years old at the time of his benefits application and previously worked as a diesel mechanic. (R. at 112, 220, 287.) Plaintiff alleges he is unable to work due to back and knee pain, a herniated lumbar disc, depression, anxiety, and nodules on his lungs resulting in breathing difficulties. (R. at 112.)

       On June 5, 2020, an Administrative Law Judge ("ALJ") denied Plaintiff's application for benefits. (R. at 511.) After exhausting his administrative remedies, Plaintiff seeks review of the ALJ's decision. This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment, rendering the matter ripe for review.[2]

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as

Having reviewed the parties' submissions and the record in this case, and for the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 21) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 23) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits on January 14, 2014, alleging disability beginning January 2, 2010. (R. at 220.) The Social Security Administration ("SSA") initially denied Plaintiff's claims on November 7, 2014, and again upon reconsideration on July 21, 2015. (R. at 140-44, 146-48.) Plaintiff requested a hearing before an ALJ, which was held on April 18, 2017 (the "April 2017 Hearing"), at which Plaintiff and a vocational expert testified. (R. at 37-67, 151-52.) On November 13, 2017, the ALJ found Plaintiff not disabled under the Act, and the Appeals Council denied Plaintiff's request for review. (R. at 1-6.)

Plaintiff initiated a civil action in this Court on October 15, 2018. (R. at 599.) On September 19, 2019, this Court remanded the case to the Appeals Council for further consideration. (R. at 600-601.) The Appeals Council vacated the decision and remanded the case to an ALJ for further administrative proceedings. (R. at 646.)

On May 13, 2020, Plaintiff and a vocational expert testified at a second hearing (the "May 2020 Hearing") before the ALJ. (R. at 537-67.) Plaintiff amended his alleged disability onset date to July 7, 2012, and his date last insured to December 31, 2014. (R. at 541, 567.) On June 5, 2020,

---

Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

the ALJ issued a written decision finding Plaintiff not disabled under the Act from July 7, 2012 through December 31, 2014. (R. at 511-29.) On January 13, 2021, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 496.) Plaintiff filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's

3

five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most the claimant can do despite his physical and mental limitations. § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform his past work given his residual functional capacity. § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that he must prove that his limitations preclude him from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. §§ 416.920(e), 404.1520(e). However, if the claimant cannot perform his past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. § 404.1520(a)(4)(v).

### III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 514-529.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between his alleged disability onset date and his date last insured.[3] (R. at 517.) At step two, the ALJ found that Plaintiff had the following severe

---

[3] Substantial gainful activity is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do

4

impairments: degenerative disc disease diagnosed as chronic lower back pain and lumbago, obesity, chronic knee pain, anxiety disorder, and depressive disorder. (R. at 517.) The ALJ concluded at step three that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in the regulations. (R. at 518.) Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity[4] and found that Plaintiff could perform light work as defined in 20 CFR § 404.1567(b) with the following exceptions:

> [H]e can stand and/or walk up to four hours in an eight-hour workday. [Plaintiff] needs to be able to alternate between sitting and standing every 30 minutes while remaining in place. He can occasionally kneel, crouch, crawl, and climb ramps and stairs. He can frequently balance. He can never climb ladders, ropes, or scaffolds. [Plaintiff] can have occasional contact with supervisors and coworkers but no contact with the public. He can perform no tandem work tasks. [Plaintiff] can work at a consistent pace throughout the workday but not at a production rate pace where tasks must be performed quickly, such as an assembly line or conveyor belt. He could, however, perform end of day goal oriented work. He would experience up to a 10% loss of productivity throughout the workday and outside of normal breaks due to difficulties in maintaining pace, persistence, and/or concentration. [Plaintiff] can tolerate occasional changes in routine work setting and procedures

---

less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[4] Residual functional capacity is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the residual functional capacity, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

>or processes. He should have very little independent decision making with no responsibility for the safety of others.

(R. at 520.) At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (R. at 527.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 527-28.) In making his findings, the ALJ considered the testimony of a vocational expert, who opined that given Plaintiff's age, education, work experience, and residual functional capacity, he would be able to perform the requirements of representative occupations in the national economy, such as inspector, assembler of small products, and assembler of printed circuit boards. (R. at 528.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. (R. at 529.)

### IV. ANALYSIS

Plaintiff challenges the ALJ's finding of "not disabled" and argues that the ALJ erred in his step five determination by: (1) declining to address and adopt the testimony of vocational expert Ruth Fast ("Ms. Fast") from the April 2017 Hearing and relying instead on the vocational expert testimony of Dr. Anita Leviton ("Dr. Leviton") from the May 2020 Hearing; (2) failing to reconcile the opinions of the two vocational experts; and (3) finding that other work exists in significant numbers in the national economy that Plaintiff could perform. (Pl.'s Mem. Supp. Summ. J. 1-2, 12 (ECF No. 22) ("Pl.'s Mem.").) In response, Defendant argues that the ALJ was not required to acknowledge, consider, or give weight to Ms. Fast's testimony from the April 2017 Hearing, and that the ALJ properly relied on Dr. Leviton's testimony to support his step five finding. (Def.'s Mem. Summ. J. 12-14 (ECF No. 23.) ("Def.'s Mem."). For the reasons set forth below, the Court finds that the ALJ did not err, and substantial evidence supports his findings.

6

**A. The ALJ Did Not Err in His Step Five Findings.**

  *1. The Testimony from the Vocational Experts from the April 2017 Hearing and the May 2020.*

At the April 2017 Hearing, Ms. Fast characterized Plaintiff's past relevant work as a diesel mechanic at the heavy exertional level. (R. at 62.) In response to the ALJ's hypothetical questions, Ms. Fast provided an example of a job that Plaintiff could perform at the light exertional level (laundry), and two at the sedentary level (document preparer and touch-up screener). (R. at 64.) Ms. Fast testified that there were 10,000 laundry positions, 46,000 document preparer positions, and 90,000 touch-up screener positions available in the national economy. (R. at 64.)

After the Appeals Council vacated the ALJ's first decision and remanded for additional evidence, a second hearing was held (i.e., the May 2020 Hearing), where Plaintiff described his employment for a different vocational expert. (R. at 542-44.) That vocational expert, Dr. Leviton, testified that Plaintiff's past relevant work as a diesel mechanic was skilled and performed at the heavy exertional level. (R. at 563.) In response to the ALJ's questions about jobs available to a hypothetical individual with Plaintiff's vocational profile, Dr. Leviton identified three representative occupations at the light exertional level that Plaintiff could perform and that were available in the national economy (inspector, small products assembler, and printed circuit boards assembler). Dr. Leviton explained that there were over 50,000 inspector positions, over 49,000 small products assembler positions, and over 49,000 printed circuit boards assembler positions available in the national economy. (R. at 565.)

  *2. The ALJ Was Not Required to Consider Ms. Fast's Testimony from the April 2017 Hearing or Reconcile the Opinions of the Vocational Experts.*

Plaintiff first argues that the ALJ was required to: (1) consider Ms. Fast's testimony from the April 2017 Hearing and explain any weight he assigned to it; and (2) reconcile any alleged

7

conflict between Ms. Fast's testimony from the April 2017 Hearing and Dr. Leviton's testimony from the May 2020 Hearing. (Pl.'s Mem. at 10-11.) In support, Plaintiff reasons that the ALJ "relied on Ms. Fast's testimony to find that other work exists in significant numbers in the national economy that [Plaintiff] can perform" but "fail[ed] to address the weight given to Ms. Fast's testimony, which is much different from that of Dr. Leviton's despite using a similar [residual functional capacity]." (Pl.'s Mem. at 11.) Plaintiff argues that the ALJ "asked essentially the same hypothetical question to Ms. Fast and Dr. Leviton," but "the vocational experts offered very different opinions - with Ms. Fast finding only one job with 10,000 positions nationally." (Pl.'s Mem. at 12.)

As Defendant points out, the original ALJ decision was vacated, rendering it a nullity. (Def. Mot. Summ. J. ECF No. 23, 11, ("Def.'s Mem.").) Once the case was remanded to the ALJ "to gather more information about the extent of [claimant's] disability, the ALJ was free to reevaluate the facts." *Houston v. Sullivan*, 895 F.2d 1012, 1015 (5th Cir. 1989). A contrary rule would discourage ALJs "from reviewing the record on remand, checking initial findings of fact, and making corrections if appropriate." *Campbell v. Bowen*, 822 F.2d 1518, 1522 (10th Cir. 1987). Thus, neither the SSA Rules nor the law of the Fourth Circuit required the ALJ to distinguish the superseded testimony of the previous vocational expert.

In a case involving different prior vocational expert testimony, the District of Arizona considered whether the ALJ had to resolve a conflict between the testimony of a vocational expert from a claimant's first hearing and the testimony of the vocational expert at the second hearing regarding the claimant's past relevant work as a claims processor. *Johnson v. Comm'r*, No. cv19-1273, 2019 U.S. Dist. LEXIS 217217, 2019 WL 6888252, at *5 (D. Ariz. Dec. 18, 2019). In essence, the claimant's "challenge simply boils down to whether the ALJ properly relied on the

second vocational expert's testimony." *Id*. The claimant in *Johnson* failed to cite to "any legal authority that indicates the ALJ erred in basing his decision on the second vocational expert's testimony without resolving the contradiction . . . allege[d]." 2019 U.S. Dist. LEXIS 217217, [WL] at *6. After observing that the vacated decision was rendered a nullity, with no legal effect whatsoever, the district court stated, "it would be anomalous that an ALJ would be required to resolve inconsistency between the first hearing that was voided and the new hearing, which occurred because the first hearing and decision was voided." *Id*. (emphasis in original). Thus, there is no requirement that an ALJ resolve inconsistencies in superseded testimony from a prior hearing after remand. *Id*. (citing *Curtis v. Colvin*, No. 3:15cv225, 2016 U.S. Dist. LEXIS 33994, 2016 WL 1056682, at *18 (N.D. Tex. Feb. 26, 2016), *report and recommendation adopted*, No. 3:15cv225, 2016 U.S. Dist. LEXIS 33541, 2016 WL 1047105 (N.D. Tex. Mar. 15, 2016)).

Plaintiff does not materially distinguish *Johnson* or *Curtis*. Further, Plaintiff does not identify authority to support the proposition that Ms. Fast's testimony at the April 2017 Hearing was somehow binding. Instead, Plaintiff argues that by accepting Dr. Leviton's testimony, the ALJ relied on "unreliable and unhelpful" testimony from a vocational expert while ignoring contrary evidence from Ms. Fast regarding the availability of 10,000 laundry positions in the national economy. (Pl.'s Mem. at 12.) However, Plaintiff omits that Ms. Fast also found 90,000 touch-up screener positions and 46,000 document preparer positions available in the national economy. (R. at 64.) Dr. Leviton found that a similar number of positions were available that Plaintiff could perform (50,000 jobs nationally as an inspector, 49,000 jobs nationally as an assembler of small products, and 49,000 jobs nationally as an assembler of printed circuit boards). (R. at 565.) This, however, is immaterial to the issue present here, where a new hearing was scheduled, and new testimony was taken precisely because of an error in the first hearing. Here, the Appeals Council's

9

remand order specifically directed the ALJ to "address the additional evidence submitted, take any further action needed to complete the administrative record, and issue a new decision." (R. 646.) The supplemental evidence obtained included additional detailed testimony from Plaintiff regarding his work performance, as well as another expert opinion by a different vocational expert.

Because the ALJ's initial decision was vacated by the Appeals Council, the ALJ was not required to reconcile the opinions of Ms. Fast from the April 2017 Hearing and Dr. Leviton from the May 2020 Hearing. *See Camille B. v. Kijakazi*, No. 2:20cv262, 2021 WL 4205341, at *4 (E.D. Va. Sep. 15, 2021). Any prior, non-final decision and its associated vocational expert testimony is not entitled to any weight. *Monroe v. Colvin*, 826 F.3d 176, 187 (4th Cir. 2016). Accordingly, the Court finds that the ALJ did not err in declining to: (1) address Ms. Fast's testimony from the April 2017 Hearing; and (2) explain any alleged conflict between the opinions of Ms. Fast and Dr. Leviton.

   3. *The ALJ Reasonably Relied on Dr. Leviton's Testimony and Substantial Evidence Supports His Findings.*

Plaintiff also argues that it was reversible error for the ALJ to rely on Dr. Leviton's identification of jobs existing in significant numbers in the national economy because two of the three identified jobs share the same code number in the Dictionary of Occupational Titles ("DOT"). (Pl.'s Mem. at 10, 12.) Plaintiff alleges that the ALJ "did not ask Dr. Leviton to explain . . . why two of the three jobs she identified have the same DOT code number (or what impact this had on the numbers provided). Nor did the ALJ . . . shared [sic] DOT code numbers in his most recent written decision." (Pl.'s Mem. at 4.) Defendant responds that the ALJ only needed to identify "one or more occupations existing in significant numbers," and that the identification of 50,000 inspector jobs available in the national economy satisfied the Commissioner's burden at step five. (Def.'s Mem. at 14, 16.)

Step five of the evaluation process requires the ALJ to consider a claimant's residual functional capacity, age, education, and work experience in determining whether the claimant can make an adjustment to other work. 20 C.F.R. §§ 404.1520(4)(v), 416.920(4)(v). When making this determination, the ALJ can use various resources, including the testimony of a vocational expert. 20 C.F.R. §§ 404.1566(d)-(e), 416.966(d)(e). The ALJ, however, is not required to accept the vocational expert's testimony. *Perez v. Barnhart*, 440 F. Supp. 2d 229, 232 (W.D. N.Y. 2006).

Alluding to Ms. Fast's opinion, Plaintiff argues that "[o]ne position with approximately 10,000 jobs nationally does not constitute significant numbers." (Pl.'s Mem. at 10.) For work to be found in significant numbers, it may exist either in the region in which the claimant lives or "in several other regions of the country." *See id.* §404.1566(a). The regulations specify that it "does not matter" whether work exists in the claimant's immediate area, a specific job vacancy exists for the claimant, or if the claimant would be hired for work. *Id*. §404.1566(a)(1)-(3). "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with [the claimant's] physical or mental abilities and vocational qualifications." *Id.* §404.1566(b).

Plaintiff is correct in noting that both the assembler of small products and assembler for printed circuit boards have the same DOT number (i.e., DOT No. 739.687-030). (R. at 528.) However, as mentioned previously, Dr. Leviton identified, and the ALJ considered as evidence, a third occupation, inspector (DOT No. 559.687-074), which Plaintiff could perform given his residual functional capacity. (R. at 565.) Plaintiff does not contend that there are any restrictions which would prohibit him from performing the duties of inspector, a job which the vocational expert testified existed in numbers of 50,000 nationally. (R. at 528, 565.) Moreover, courts have recognized "significant numbers" of available occupations in positions totaling fewer than 50,000.

11

*See e.g., Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-529 (9th Cir. 2014) (holding that 25,000 jobs nationwide represents a significant number of jobs); *Aquino-Hernandez v. Saul*, No. CV-9:19-582-CMC-BM, 2020 WL 3030211, at *8 (S.D. W. Va. May 4, 2016) (finding 3,000 jobs to qualify as a significant number of jobs in the national economy). Thus, the ALJ satisfied his burden at step five by identifying at least one occupation that Plaintiff could perform that exists in significant numbers in the national economy. Accordingly, the Court finds that the ALJ properly relied on this testimony, and substantial evidence supports the ALJ's findings.

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 21) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 23) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

Let the Clerk file a copy of this Report and Recommendation electronically, notify all counsel of record and forward a copy to United States District Judge David J. Novak.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ MRC
Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: July 5, 2022